Please be seated. Judge Stein, can you hear us? I can. Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Judge Smith and I are very pleased to be joined by Judge Sidney Stein from the Southern District of New York. For personal reasons, for family reasons, Judge Stein is appearing by video from the D.C. Circuit in Washington, D.C. We want to thank Judge Stein for his service to the United States and for his service to this court. Very happy to have you with us. Thank you for having me. We have three items that have been submitted on the briefs. That is Tong v. Lynch, Murillo v. CWA Ramona, and Humphrey v. Grounds. We have three matters on the oral argument calendar, and we will take them in the order in which they appear on the calendar. The first case is Brown v. Bank of America. Good morning, Your Honor. I'm David Masella, and I represent Larry Brown, who is a plaintiff. Yeah, Mr. Masella, you may need to keep your voice up just a little bit. Yes, I will. Or speak right into the mic. I'll do that. Pull it down. Thank you, sir. The owners of 1,349 homes assigned their claims against various banks to a company named Lifesavers, which in turn assigned them to Mr. Brown. When the court below dismissed the second amended complaint, it made four incorrect rulings. It improperly dismissed the RICO claim. It improperly dismissed all other claims on the grounds that they could only be pursued by someone with an ownership interest. It limited any amendments to one mortgage, thereby dismissing 1,348 claims. And it approved the introduction into the record of an anonymous, unsworn email whose sole purpose was to taint the procedure. I'd like to turn first to the limitation of amendments, because that's really why we're here. If we'd been allowed to amend all the claims, we wouldn't have appealed. So you're really turning to the end of the district court error by severing the claims.  If the district court had severed the claims, there would now be 1,349 cases in front of the district court. What the district court did was it said claims regarding each of the remaining 1,348 mortgages shall be filed in separate actions, with each case being limited to a single mortgage. That meant if we had gone forward with a single case, the other 1,348 cases would have died right then. Now, when the court did this — Is it because there was a statute of limitations problem? Well, there may well be. I mean, the parties have argued over the applicability of — Did you go think about that? I mean, the problem that they have in this particular matter is that when we are talking about severance, it's an abuse of discretion standard. And it seems as if — well, when I read what the district court said in the severance order, it seemed to me like what the district court was saying is we're only having one claim in this particular case, and every other case can be brought. Your Honor, there's a procedure to sever claims. I've been in cases where they've been severed. Normally, the clerk is directed to, you know, split the claims up with each claim being a new case. The court did not do that. The court dismissed those claims, and that's why we have a de novo standard. But, sir, if I may, if I may, Rule 21 certainly gives the presiding judge in the district court great discretion to determine how he or she wants to structure the severance. Indeed, it says that it can be on the court's own motion, and it can be at any time on just terms, sever any claim against the party. And I posit — I mean, you'll respond, but I posit that that's an — what the judge here did is an appropriate use of a trial judge's discretion to fashion the way claims are going to come before him or her. Your Honor, Rule 21 is not mentioned at all in the court's opinion. The court didn't say it was severing. The court didn't direct severance. The court simply said one claim, the other 1,300, have to be filed as new cases. If it were severed, they would continue as existing but severed cases. But doesn't that — doesn't the way he did that allow you to pursue the claim on behalf of one of the claimants, have your claim determined, and allows the others to go forward as well? No. Because, Your Honor, there's a great deal of case law about what happens when you sever. When you sever, each and every severed claim immediately becomes a docketed case. That did not happen here. And let me point out — Counsel, as I read what the district court did is that he dismissed the complaint so that you — there was no complaint filed by anybody. Right. And then said, if you're going to refile, you have to refile on — by one person. So if you had — if he had found the complaint a satisfactory complaint, he could have still severed it and created 1,300 lawsuits based on the one complaint. You just couldn't have piled all these people together and made him the ombudsman general for the State of California. But he didn't do that. When he said you can only amend and come back with one mortgage, he was saying, however you choose them. Normally what happens in cases like this is they simply pick the first defendant, knock everything else out. He did it slightly differently.  And here he had — he had dismissed the complaint. So once he dismissed the complaint, he was telling you, don't come back with 1,300 plaintiffs or 1,300 separate claims on property in California when you file your third complaint because that's not going to be proper. So what he meant, what he said was, you've got to file new claims. Those new claims would have the new date. And I was going to get to this eventually, but under the court's, you know, Russ v. Sports Chalet decision, he should have performed a prejudice analysis because obviously we were already a year and a half. A prejudice analysis on what? On dismissal of the complaint or the severance? On the effect of dismissing rather than severing. Well, he was dismissing because the complaint was inadequate, right? He was asking you to refile. I mean, we're going to get to that. But, Your Honor, he said one claim. Everything else has to be filed as a new case. That's what he said. What exactly is the prejudice involved there apart from the paperwork for you? There's a timing issue. There are some claims that have statutes of limitation. This case was originally decided — was filed in September of 2012. This decision was reached in February of 2014. That's a year and a half, and there were still other issues involved in the case. That's one of the reasons why a prejudice analysis has to be undertaken. Well, why can't you — why wouldn't you just come in and say, Judge, we — you dismissed — you dismissed this, you know, Plaintiff A's claim or this property claim previously, and so we tried to — we filed it timely at the time. And this — this pleading ought to relate back. Well, that's a risk, because it won't relate back if you file a brand-new case. But the problem comes in that the record doesn't say anything about this. You make a big presentation right now, make a representation, which I — I respect you as counsel, but the record doesn't say anything that you're now suggesting. That's why I ask you the question about the limitation, because it seems to me that in each one of these situations, there's a way to get around any one of these problems you're — you now represent to happen, but I don't have a record. I don't know, neither did poor old Judge Hatter have a record. And therefore, all he did was say, bring one at a time. If Judge Hatter had said, I'm operating under Rule 21, we would have responded appropriately. He didn't. Let me also point out, because let's go to what Judge Hatter said. Somewhat deltically, he said there was a misjoinder of claims and mortgages. Well, Mr. Brown, as a sole plaintiff, has the right to aggregate all of his claims under Rule 18. Well, aggregating claims against — against a particular defendant is one thing. Aggregating every claim he has in the world against every conceivable defendant in the world is not permissible. That's where you get to Rules 20a2a and a2b. They allow joinder of defendants when there's a series of transactions or common questions of fact in law. We have both of those here. The common questions of law have to do with Glaske and now even OVA. And there was a series of related transactions. That was the bulk securitization of mortgages using MERS as a conduit. Our argument was that when you went through MERS, when you got to the end, you had invalid assignments. And these cases all involve that. So — and, in fact, the RICO claim at great length showed how these cases were all tied together. So we don't believe that the Court was correct when he severed the claims. There's almost nothing in the opinion about his basis for severing the claims. There's not even a mention of a case, a statute, a rule. There's just this statement about misjoinder of claims and mortgages. I mean, Moore says you can't have misjoinder of claims. You may have misjoinder of defendants. And, as I say, I think 20a2a and b allow us to deal with that. If I can — Sir, I see from the clock that I can see that you only have five minutes left. I'd like to move you, if it's acceptable to the rest of the panel, to the issue of the assignment. It seems to me that that's the most critical point here, certainly on the RICO claims. Talk to us about that. Okay. The Court reaches out to the Third Circuit for the Lerman case and says that RICO claims have to be assigned specifically. Lerman's not the law in this circuit. In fact, Lerman itself says that the Ninth Circuit follows a different rule. Well, just a minute. Just a minute. There is no law in the Ninth Circuit about assignment. Is that correct? No. In Enree — In Enree National Mortgage, it was readied. I readied Enree National Mortgage, and I don't think that is applicable to this particular case. There is no law in this circuit about how to assign claims. And it seems as if, then, this judge said, well, and since I don't have any law for it, first of all, I've got to determine whether you can assign them at all. Well, California — and remember, these are all California homes, California homeowners. California statutes allow the broadest form of assignment. I understand what they allow for, but the fact is we're talking about a federal RICO action. We're talking about the assignment of that action, and we've got no Ninth Circuit law that says it can be assigned or how to assign it. Actually, in the Kelly case, the case notes when it's talking about what's assignable and not assignable, it notes favorably National Mortgage and says RICO claims are assignable. And that was a decision by the Ninth Circuit, not by — not by a district court. The second thing is that the court — So that's your answer to that? Is that your answer, then, to this question? You say that is absolute proof to you, Judge Smith, that it's assignable in the Ninth Circuit. Because I looked at that case, and I'm not sure you're right. My worry is this. If there is no law in the Ninth Circuit about whether assignable or not, and you're looking to other places to find out about that assignment, it seems logical that one would pick a sister circuit. And if one picks a sister circuit, and that is the Third Circuit, and then one applies the Third Circuit, it seems a little disingenuous to suggest that because the Third Circuit would allow the assignment, that the way they allow the assignment is just wrong. Well, let me — let me point out one other thing. If you read the Lerman decision itself, it says an assignment of all claims probably passes muster. And — and, you know, the Court also said it couldn't reach this issue because Mr. Brown hadn't attached the 6,531 pages of assignments to the second amended complaint. Assignments are contracts under Rule 8. They can be pled, you know, generally. But why did he say that? I mean, the bottom line is the district court dismissed the case without prejudice, and then he said — and that was to say you can come back. And then he said, looking at what happened in the Third Circuit, I've got to have an express assignment. You have an alleged one. You haven't put anything in your complaint which would suggest one. So come back with that stuff, and we'll know whether it's assigned or not. Our allegation of the assignments mirrors the allegation used in Sprint. I mean, let's not forget that for all of the appellee's claims, the assign and litigate model is flawed. The United States Supreme Court looked at an assignment of 1,400 claims and said, fine. In fact, it went on at great length about how mass assignments have certain advantages. Is Sprint an antitrust case? This isn't an antitrust case. I understand. The only reason I ask you the question is, when the Third Circuit was looking at this, they said, because RICO was born out of the Clayton Act, and therefore had its, if you will, the reason it came to existence was modeling the Clayton Act, we're going to then suggest that the antitrust suits control. Well, first, the direct purchaser rule, which is what Lerman talked about, has absolutely no equivalent in RICO. So if you're importing from antitrust cases, you have to import the part of antitrust law that looks like RICO, and there's an awful lot of RICO which is not taken from the Antitrust Act. Sir, what Lerman says, because you quoted Lerman, it says, Litten expressly assigned to Joyce, quote, all of, end quote, LOPC's, quote, causes of action claims and demands of whatsoever nature, end quote. Now here, we don't have the assignments, and your paragraph two tells us precious little about the nature of the assignments. It says, life savers in turn is the assignee of the claims of the individuals listed on exhibit A, and that is solely in the capacity of the assignee, of the assignee, or as that plaintiff appears herein. But there's, there are no facts in that allegation that make it plausible to us, I would argue, that these assignors were allowing the assignee to assert causes of action claims and demands. We just don't have anything that even suggests that that's a plausible reading. So if you would respond. Sure. There's a history here. The assignments were the subject of a special status hearing that went on for 45 minutes. There is 500 pages of the assignments in the record. They were in the first amended complaint, but everyone knew they were there. Bank of America commented on them. The judge knew what they were. The fact is, it's not like people had no idea what the assignments were. And the assignments, which you can find in the record, clearly say all claims of any sort. Well, counsel, you've, you have in the paragraph that Judge Stein has read to you is paragraph two of the second amended complaint. I believe that at the first amended complaint, you actually attach something as Exhibit A that looks like it is a sample assignment. It's 562 pages of assignments. And it uses the language there, all rights, titles, and all rights, title, and interest. That's correct. Is that sufficient? What else can you assign? They're assigning everything. Well, it didn't use, I mean, there are other languages that you might use. The question is whether this is going to be sufficient. It also goes on and talks about claims involving wrongful foreclosure, fraud. I mean, these assignments are fairly detailed. I guess the ultimate is why wasn't it attached or alleged in the second amended? Well, you know, there's a history to the second amended complaint. I know. Originally, we had someone acting pro se. They got a lawyer. The lawyer looked at this sprawling complaint, actually filed a motion. That's Mr. Jacobs, who's my co-counsel here, filed a motion describing what he wanted to do, said he wanted to do a streamlined complaint that would rely heavily on tables so that people could see the substance of who the assigners were, where they lived, what their properties were, how they stood with respect to banks and MERS and other things. And that was approved. And he was given extra time to do it. We were trying. He was trying to go from this sprawling pro se complaint to a more condensed complaint. And no one objected. And so at that point in time, we originally, Mr. Brown acting on his own, thought there were this many assignments. Mr. Jacobs did the research and found all 6,000 pages and just didn't think it was appropriate to add 6,000 pages to a complaint, especially when everyone knew what the assignments were. If I could beg the indulgence of the Court, I would like to say just one thing about the Chauffoux case, which has to do with counts 2 to 6. And the point I'd like to make, you know, besides the fact that there are lots of cases going the other way, Chauffoux on its own terms only talks about suits to quiet title. And in some dicta, it says the requirement could apply to suits to cancel instruments. Well, that's count 6. The other counts, 2 through 5, have nothing to do with title or instruments. In fact, the count for wrongful foreclosure is a tort count. And torts are a chosen action. They obviously can be assigned. They are not property related. I mean, I think there are other problems with Chauffoux. There is 150 years of law going in the other direction. And the fact is that even if you take it on its own, it isn't as broad. Every conceivable claim related to property can only be brought by an owner. And also, as we raised below, as we raised on page 8 of our appellate's brief, and as we raised in our reply brief, if this ownership is a, as the court said, this is a jurisdictional issue, you can't bring these cases without having ownership. We say that under 28 U.S.C. 1653, we should be allowed to amend the complaint because in fact, in addition to the assignments, Mr. Brown has grant deeds from virtually everyone. But you had, you had the ability to amend anyway, and you filed the notice of the intent not to amend. So you had the ability to amend.  You're the one who said we're not going to amend. Now, by the way- Isn't that true? That's true. And so at that point, even though you could amend, I mean, you're the one who stepped out of amending, and it seems to me you stepped out of it on the severing, since you started out with severing. I'm just trying to make sure I have the facts right. Well, there was no severing. Well, okay. Your argument about that. All right. So you stepped out because of that argument, as I understand. Well, and also this circuit has said that this is an appropriate way, WMX and I think Ernst say, this is an appropriate way to stand on your pleadings and move to appeal. Because otherwise, what we would have been doing is spending three years litigating a single case before we could get to this court on the issue of whether the joinder was correct on the issue of whether the dismissal of the other 1,348 claims were correct. And at the same time, we'd be wondering what to do. By the way, these aren't claims. These are people. These are homeowners. They've been through a very hard time. Some of them are here today. The fact is, we needed resolution in a way that preserved everyone's rights. If this panel decides that the judge was incorrect below, then we go back to where we were and we can handle this case in a much more appropriate fashion. And as I think everyone knows, the law has moved dramatically in the favor of the appellants. Mr. Mazzella, you told us that Brown has grant deeds. Was that alleged any place in the complaint? Yes, it is, actually. It's alleged briefly, but – and it's also alleged – And when you say that he's got grant deeds, what does that mean? Does that mean that he is the owner of these pieces of property? What these documents are is that they are documents that are actually executed in a form that would make them recordable in California law, where each of the assignors They're recordable, but have not been recorded? Have not been recorded. And you always have the option of not recording. You lose claims against the world, but you have claims against people. And they are grant deeds, and they assign originally to lifesavers a 5 percent interest in the property. And for valuable consideration, so-and-so grants the lifesavers, you know, an interest in the following property. I have one sitting here in front of me. But they are grant deeds. There's a lot of discussion as to their effectiveness, but there's nothing in the law that says to be an owner, you have to have 100 percent ownership. So they were there. We believe – Doesn't that create some additional questions, though, about – particularly if we got to questions about title, if you don't have all of the owners before the court? Well, that issue – actually, ironically, that issue is being litigated right now in Fresno in a parallel case in state court involving more lifesavers' deeds. And at least a preliminary ruling from that court is that, no, you don't have to join the owners. Because the fact is that the claims that could give rise to money judgments have been completely assigned to Mr. Brown. Therefore, there is no risk of double jeopardy here. Right. That sounds like a different situation. So I asked specifically if it affects the title, so if it's in the nature of a quit claim action or something like that. Don't you have to have all the property owners before the court? I don't believe so, but that's an issue that we never reached in this particular case. Okay. Mr. Mazzelli, we've taken you well over your time. I am going to allow you a minute for rebuttal. Thank you very much to the panel. Thank you for your comments. Good morning, Your Honors. Nafis Cekirge for the Bank of America Defendants. If I may, to start off with, I'd like to just make a few comments in response to Mr. Mazzelli's arguments. Your Honor asked if there was any indication that title to property was assigned to Mr. Brown in the record. I believe Mr. Mazzelli said yes. I don't think there is. There's only one allegation relating to assignment in the second amended complaint, and that's the second paragraph. It's found on page 335 of the record, and as far as I know, that's it. Everything else is outside the record and should not be considered by this panel. Secondly, Mr. Mazzelli also spent a great deal of time talking about assignments in the first amended complaint. But that was superseded by the second amended complaint, and as such is a nullity. So I do not believe that this panel should consider any of those assignments either. There's a practical problem, though, here. I mean, he has alleged in the second amended complaint that he's the assignee of the interest in this property or the interest in these claims. And, yes, they could have attached 6,000 pages of assignments, and you'd be here hollering that this was a prolix document and a violation of one or more rules of the Federal Rules of Civil Procedure. In response, Your Honor, neither I and I don't think more importantly the district court was asking Mr. Brown to attach all those documents. But what he could have done is taken the operative clause out of the assignments and alleged it in the second amended complaint. Here, the allegation is. Why isn't that simply a matter of contract? And you want to challenge the matter of you want to challenge paragraph 2, you can challenge paragraph 2, and then come forward with the proof, and this could all be resolved in about 15 minutes' time in front of in a hearing in a district court. It just seems to me that's not, just not a big deal. So I don't understand why we have to make it a big deal. Well, a couple of things, Your Honor. I think as a threshold matter, the plaintiff is obligated to allege his standing. So the district court has said that. Well, he said he's been assigned this by Lifesavers, and Lifesaver was the assignee of the claims listed by the individuals. Of the assignee of what, though, Your Honor? He just says he's the assignee of Lifesavers, which in turn is the assignee of claims of individuals. We don't know if those relate to RICO claims, which in our position is that the Third Circuit was correct in that express assignments are required. It gives us absolutely no inkling of what kind of assignment was made. And we don't think that even meets. Well, you can move for a more definite statement under the Federal Rules of Civil Procedure if you want him to explain it further. Well, we move to dismiss, and I think the cure there was the cure that the district court granted Mr. Brown, which was to file an amended pleading to fix those standing allegations. He chose not to do that and to stand on his complaint. And in doing so, he took a calculated risk that if this Court does not overturn the district court, then his case is over. And again the assignments are too vague. They're too vague. And here's why, Your Honor. There's a Second Circuit case which I submitted as supplemental authority. It's called Courtland. And it gives a little more insight as to why the allegations have to be a little more substantial than this. The Supreme Court has said, and the Second Circuit has adopted, and it's pretty much the law of the land, that an assignment has to assign title to claims. It can't assign just a power of attorney to litigate. So it's at least a threshold matter that has to be alleged so that the plaintiff can establish his standing as an assignee. Looking again at the language in the Second Amendment complaints, we have no idea what's alleged here. We don't know if Mr. Brown has a power of attorney to sue. We don't know if he has title to the claims. And he has an obligation, in our view, to plead more. I think the district court agreed with us. And the district court didn't end Mr. Brown's claim. He said, please come back and allege your assignment in a more proper manner. And Mr. Brown chose not to do so. Counsel, but for Lerman, put Lerman aside for a moment. It's a sister circuit, so it's not controlling on us. Put that aside. What's left of your argument, given paragraph two, which states clearly Lifesavers is the assignee of the claims list of the individuals listed, and Brown is Lifesavers' assignee? What more do you want? Again, forget Lerman. Again, Your Honor, setting aside Lerman, we don't think that this allegation meets the basic standard of pleading assignment. And I go back to the Cortland case out of the Second Circuit. There, the court said that if you are assigned a power of attorney, you don't have standing. If you're assigned, you must be assigned title to the claims to have standing. And it's our position, at a minimum, there must be an allegation that there's been an assignment of title to claims. We cannot- To go back to Judge Smith's question, what do you have in the Ninth Circuit that says that? In the Ninth Circuit, Your Honor, unfortunately, there isn't a fulsome discussion of how an assignment is affected. That's why we've turned to sister circuits in the Third and Second Circuits. We know that there are general statements saying that an assignment doesn't have to take a particular form. But then again, that doesn't relate to RICO, and it leaves a lot of the questions in this case unanswered. We do have in the Ninth Circuit Britain, right? Britain versus co-op banking, which is a Ninth Circuit 1993 case, which suggests what an assignee of a contract right must prove. Okay. But I don't believe that relates to pleading standards, Your Honor. I understand. And so, based on that authority, the notion that RICO must be expressly assigned, the notion that to have standing as an assignee to proceed, one must have title to claims. We just don't think that the assignment in paragraph two does it. And there was an easy fix to this. The court did not end Mr. Brown's case. It allowed him to go forward. It gave him an opportunity to amend as to all of his claims. And Mr. Brown chose not to do so. And if Your Honors have no further questions, I am completing my argument, Your Honor. You don't want to talk about the severance? Well, the severance in our view... I was going to say you better respond to the severance argument. Well, the severance in our view is not a very difficult issue. There's an abuse of discretion standard. Courts have broad discretion to sever. Right. The district court took this up in kind of an interesting order. He dismisses the complaint, then says, if you're going to file an amended complaint, don't bring back all of these claims in one complaint. You've got to bring them one at a time. Now, if the district court had just said, you've brought too many, the complaint is adequate, but you've brought too many, you've piled too many things in here, and he had simply severed it, then the single filing fee might have covered 1,300 new suits. In the way that the district court ordered it, by dismissing the suit first and then saying when you refile it, only bring them one at a time, he's forced them to file 1,300 suits, and for which they're going to have to pay 1,300 filing fees. So there's a very practical consequence, and it sounds like it could be quite a bit of money, to the order in which the district court did things. Well, to answer your question, let me also respond to Mr. Maselli. Mr. Maselli said that the severance was not under Rule 21. We asked for severance under Rule 21 in our papers, so we don't know what other rule the severance could be under. And what the district court did is actually quite common. It's got – there's examples of it in both the Fifth Circuit and the Southern District of New York, where assignees bring claims arising out of different transactions and try to litigate them collectively in a single lawsuit, and for reasons of prejudice in judicial economy, courts have severed the claims and asked that the separate sets of assigned claims proceed in separate lawsuits. So what Judge Hatter did is not unprecedented. In fact, we think it's the correct approach because we really, as Padron said, out of the Central District, with mortgage cases, each case is really an individual case. So what we have here are 1,300-plus cases under, you know, before one judge. You're going to have 1,300 summary judgment motions. To your point, Your Honor, you have one filing fee where you're asking the court to preside over 1,300-some-odd cases. So we don't believe that Judge Hatter abused his discretion.  Let me take you to the claim 2, the wrongful foreclosure, because counsel suggests there is no way that on a wrongful foreclosure case, which is for general damages, that that has anything to do with what Judge Hatter said out of Chau Foo. Well, I believe one of the claims in Chau Foo was a wrongful foreclosure. I know. That's what he says. Well, Chau Foo talks about wrongful foreclosure. I agree with that. But really, is it applicable to this wrongful foreclosure action? I think the takeaway from Chau Foo is if an assignee wants to litigate claims relating to a property, to a title to a property, he has to have an interest in the underlying property. And to us, Chau Foo says that clearly, and it's the only precedent on point. And without an allegation that Mr. Brown was assigned property interests, we think that ends the non-RECO claims on the basis of Chau Foo. What about the 5% interest that your adversary claims is in some of the documents? Well, again, Your Honor, that's outside the record. It's not pleaded, and we would ask the panel not to consider that. But if you would like me to go outside the pleadings, I'm litigating a number of cases against Mr. Brown in California. And there are an enormous amount of problems with those deeds. And to your point, Your Honor, we may be back where we started because there's a good chance that all of the property owners would have to be brought in. And we have what I believe Mr. Brown was trying to avoid to avoid this court's claims arising out of different mortgage transactions in a single lawsuit. So I think you have that issue right there, potentially, with the assignment of property interests. Why don't you tell me why you think Lerman is correct? Well, Lerman relied on GetGulfStreams. And GulfStreams held that because of the direct purchaser rule, there should be an express assignment of antitrust claims. And Lerman relied on GulfStreams and said that because RICO was modeled after the Clayton Act, the same analysis should apply. Mr. Maselli's response was, Lerman's wrong because the direct purchaser concept doesn't have an analog in RICO. That is simply not correct. I can direct the court to another case out of the Third Circuit, McCarthy v. Recordex, 80 Federal 3rd 842, it's a 1996 case. And as plain as can be, it says, significantly antitrust standing principles apply equally to allegations of RICO violations. The precepts taught by Illinois BRIC and Utilicorp apply to RICO claims, thereby denying RICO standing to indirect victims. So there is a very substantial analogy between RICO and antitrust. And in fact, this Court did not acknowledge the special problems attendant to assignment of antitrust claims citing GulfStreams. So we think that it stands to reason that this Court should also conclude that. Robertson The fact that the RICO statute was patterned after the Clayton Act suggests that Congress is simply taking a shortcut in the way in which it drafted the statute. The statute itself actually says nothing about assignments. So there's nothing in the statute that suggests this. It's a, it's sort of a poor analogy. I think it comes down to the direct purchaser rule, Your Honor. The, the concern in antitrust assignments was that Congress wanted direct purchasers and only direct purchasers to bring antitrust claims. And that concern and that requirement is also applicable to RICO. So, why? That's the conclusion. I haven't heard the analysis. Well, the analysis is, if you don't have an express assignment, you have people outside of the sphere of the direct purchasers or their assignees who may be bringing these claims that Congress only intended direct purchasers to bring. But you keep giving me the conclusion that Congress only intended direct purchasers. I, I, but I haven't heard the analysis yet. So I keep getting the conclusion but not the analysis. What, how do we know that Congress intended that only direct purchasers be able to bring a RICO claim? Well, I think, Your Honor, my answer to that would be because the Supreme Court said so in Illinois BRIC and Utilicorp. Okay. That has to do with antitrust. Illinois BRIC is not a, is a pre-RICO case, so it can't tell us what Congress intended in RICO. So how do we know that Congress intended that only direct purchasers or the equivalent of direct purchasers be able to bring RICO claims? I think Your Honor is going to get upset with me for stating the conclusion again, but my best answer is because that's what our precedent says. But the precedent being Lerman. And McCardex and, you know, a lot of cases out of the Third Circuit that have analyzed this issue. But that, but that's it. I mean, you don't, the analysis in Lerman is pretty thin. That's, that's part of my problem with Lerman. I don't know whether it's right or not, but it's a fairly thin analysis. It simply says RICO was patterned after, after, was patterned after the Clayton Act. And in the Clayton Act, we have held as a result of Illinois BRIC that only a direct purchaser can, has standing to bring the suit. Again, that doesn't, that doesn't tell us anything. There's no analysis of the statute. There's no mention of assignment in RICO. There's no indication of what Congress intended with respect to RICO, other than the fact that it seemed to pattern something after another statute. I agree Lerman doesn't discuss it in, in, in, in great detail. But again, I think reading the case law around why Gulfstreams decided that an express assignment was required in the antitrust context also applies in RICO, if you accept that the RICO statute only applies to direct purchasers. If I understand the reasoning of those cases, it's because the damage that has been, that's been inflicted on the market when we have an antitrust conspiracy is, is, is going to be visited on the head of the first purchaser. And then it simply gets passed down from there. And there may not be, it seems to me that the evidence is that the first purchaser is the one who suffered the injury. Is that also the case in RICO? I believe so. I mean, if there's a, if there's a racketeering enterprise, and then you would naturally have other people claiming harm down the line. But again, the same problems that you have with antitrust arise, namely, how do you prove the damages? Or the damages could be very speculative. So I think that's, for that reason, RICO also limits the the the harm, the standing to direct purchasers. And if I may say also, Your Honor, just to reiterate my point, it's again, our position that even if this court doesn't find that an express RICO assignment is required, which we believe it should find. We also think that the, the allegation in paragraph two is far, far too thin as it stands. What language do you think needs to be used to bring about an express assignment of RICO? Well, at a, at a, at a minimum, at a minimum, I think that there should be an assignment of all right title and claims. And it doesn't necessarily have to say RICO, but it should say all, right title. That's an important word to claim, to all claims, so that you could fairly read it to, to encapsulate RICO. But the, I think title is the key thing in my view. Why, why is title? Because the Supreme Court has said that an assignee of, who's essentially given the power of attorney to litigate as opposed to an assignee who's given. If you said something like right title and interest, would that be sufficient? If it's right title and interest to all claims, it could be sufficient. I would have to see the language, but yes. But it would have to use the word claims? It would have to use claims, cause of action. Something where a reasonable court could sit down and understand that possibly a RICO assignment was captured. Because Appendix A to the First Amendment complaint uses that language. It uses rights, title, and interest pursuant to a wrongful foreclosure involving MERS and other parties. Well, I mean, I think there are problems with that assignment. That, I don't know if that could be read to encapsulate a RICO assignment, because it relates to wrongful foreclosure and eviction. But again, my point is, that complaint is a nullity. It's been superseded by the Second Amendment complaint. I understand it's there, but for the purposes of the record, it's a nullity. I mean, you've sort of whipsawed the plaintiffs here. Because you they give you this and you say, well, this is, we agree with Judge Hatter, this has to be dismissed. They give you a Second Amendment complaint and decide not to attach this because it would make the complaint much, much too long, and you say, they didn't, they didn't allege it adequately, so now they're gone. It doesn't seem to matter what they do, either they've pled too much or pled too little. We've never challenged the First Amendment complaint on the basis of the pleading of the assignment saying it was too detailed. I'd like to see every assignment. I want to be sure that I'm defending my client against a proper assignee. We challenge that because we believe Mr. Brown was practicing law without a license. That's why he brought in Mr. Jacobs. We never intimated that the assignments and the agreements were far too long and the complaint was far too long. Again, I would like to see those assignments, because at the end of the day, before we proceed with the litigation, we want to know we're, we're litigating against the proper assignee. Sir, am I correct that you would arguably be satisfied with a statement in paragraph two of the second amended complaint that the assignments assigned all of the causes of action claims and demands of whatsoever nature. I'm quoting from Lehrman, but would that satisfy your argument? Again, I would have to see it, but I think that would go a long way towards satisfying my argument. The problem here is by choosing to file this appeal and stand on his complaint. Mr. Brown took a calculated risk that if this panel finds that the assignment allegation as it is stated is insufficient and the district court was correct, he doesn't get another opportunity to amend. And we have that precedent out of the Ninth Circuit in Edwards v. Marin County, where six claims were dismissed with prejudice. The RICO claim was dismissed with leave to amend. This court said that the plaintiff took a calculated risk because he thought that the six dismissed claims were more important than the RICO claim. And when the panel ultimately found that the district court correctly dismissed  And so I think that's the situation that we're in here. Any further questions? Mr. Sekirge, thank you very much. Thank you, Your Honors. Mr. Maselli, I will give you a minute for response. Three short points. Mr. Sekirge properly mentioned that they moved for rule 21. The opinion doesn't mention anything about rule 21. I think that means that their motion was denied. On Cortland, it has this very ---- Well, they got the relief they were seeking, right? No. I don't think they got severance because the word severance is not used in the opinion. On Cortland, I just want to point out, it has this strange case. It says you need not possess more than title. Assignments are not like cars. There's not a piece of paper that says this is the title, we move it. I'm not quite sure what title to an assignment is. I think when you've got a written document saying that you've had something assigned, that that is sufficient. There is no other ---- we don't have a registry of assignments anywhere. Finally, I do want to go back to national mortgage security. And Judge Tashima's statement, permitting the assignment of RICO claims, on the other hand, would not restrict RICO's scope, which would serve to effectuate RICO's broad remedial purpose. He said that after he had conducted a very thorough examination of these claims based on antitrust law. So to the extent that we have statements in the Ninth Circuit, and I realize it's a district court, it goes absolutely opposite of Lerman. It says we've looked at these issues. We've looked at how much we're importing from the Clayton Act, and we've decided that we can assign. So those are basically the points I want to make. You've been very kind with your time. If you have any questions, I'd be very happy to answer them. I don't think there are further questions. Thank you much. Thank you very much. We thank all counsel for the argument. Brown v. Bank of America has submitted. Your Honor, Robert Bailey for Wells Fargo. Would I be permitted to have just one minute to address a couple of points? I'm sorry. That's a no.
judges: Bybee, N.R. Smith, Stein